SAMUEL M. CHESS, JR., DEFENDANT IN ERROR, v. EMIL VOCKROTH, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided March 2, 1908.

1. There is a distinction between an action for the recovery of damages for the vendor's breach of an existing contract of sale, and an action for the recovery of a deposit paid upon a contract of sale, terminated by abandonment, repudiation or rescission. Nevertheless, when evidence in support of a right to recover a deposit is offered, without a distinct and plain objection by the defendant, in an action which seeks damages for the breach of an existing contract, the objection will not avail, on error brought, that the evidence was outside of the issue made by the pleadings. In such case, the real question in dispute having been fairly tried, the declaration will be amended so as to support the judgment.

2. Though a perusal of the printed case should show, negatively, that there was a failure to submit a certain question to the jury, argument that, in such failure, there was error, will not be successful, inasmuch as, on error, it will be presumed, in the absence of instructions to the contrary, that the trial court submitted all disputed questions of fact to the determination of the jury.

3. A mere omission to give a pertinent charge when not requested, or to state some legal principle applicable to the facts of the case, is no ground of error.

4. If a party to a contract of sale, without warrant either in common or statute law, insists upon the execution of a chattel mortgage by the wife of the other party, as a condition of his own performance, such insistence is evidential of a waiver of any actual tender of the chattel mortgage or of the money which together formed part of the consideration of the sale, and the other party is excused from such tender. A motion for nonsuit on the ground of no proper tender is therefore rightly refused, in an action to recover a deposit made on account of the purchase-money.

On writ of error to the Supreme Court.

Samuel M. Chess, Jr., plaintiff below, brought in the Supreme Court an action upon contract against Emil Vockroth, the defendant below.

The plaintiff's declaration embraced both a special count and the common counts, and in the former he set up a written

contract, dated January 18th, 1905, whereby the defendant, in consideration of $500 paid down, agreed to sell and assign to the plaintiff, on or before January 20th, 1905, his five years' leasehold interest in the store No. 55 Newark avenue, Jersey City, New Jersey, with all the stock and fixtures therein, and a policy of insurance against fire, at the total price of $7,760; his (plaintiff's) payment of the $500 as a deposit on account of the purchase-money; his readiness to pay the remainder of the purchase-money and to complete the purchase; his request to the defendant to make a good and sufficient assignment and transfer of the leasehold interest, stock, &c., and the defendant's wrongful refusal so to do, to the loss and damage of the plaintiff. The defendant interposed a plea of the general issue.

The issue joined between the parties was tried at the Hudson Circuit, before Mr. Justice Fort and a jury.

The proofs at the trial, so far as now pertinent, were as follows:

For the plaintiff: The execution of the contract was admitted, and it was offered as an exhibit. It was in these words:

"JERSEY CITY, January 18th, 1905.

"In consideration of five hundred dollars ($500), I hereby sell, transfer and assign my drug store, number 55 Newark avenue, Jersey City, to Mr. S. M. Chess, Jr., with all its contents, consisting of stock, fixtures and insurance policy, with a five years' lease of store as it stands to-day, for the agreed price of seven thousand seven hundred and sixty dollars ($7,760). Final settlement to be made on or before January 20th, P. M.                    EMIL VOCKROTH.

"Witness—THOMAS OSTERMAN."

The oral evidence was to the effect that the contract was signed at the store, on the day of its written date; that there were present that day the two principals, Vockroth and Chess, S. Guterman, a New York lawyer, who was Chess' attorney, and Osterman, the broker who had brought the parties together; that the sum of $500 was then paid in cash as a

deposit on account of the purchase-money; that the sale was to be completed at the end of two days, but, in fact, discussions of detail in performance of the contract continued through four or five days; that after the making of the contract it was agreed that the purchase-money, over and above the deposit, should be discharged, to the extent of $4,760, by promissory notes of $100 each, to be payable one a month, with interest, and secured by a chattel mortgage of the stock and fixtures sold and assigned, and the residue ($2,500) should be paid in cash at the completion of the sale; that at the last meeting of the parties in Jersey City (Mrs. Vockroth and Mrs. Chess, J. A. Hamill, a New Jersey lawyer, who was Vockroth's attorney, and Reardon, a clerk, then also being present), Chess, by himself or his attorney, tendered the $100 promissory notes, offered himself ready to sign forthwith the chattel mortgage, which by arrangement had been prepared by Vockroth's attorney, and also tendered the $2,500, not in cash, but by and in a certified check; that the offer and tender aforesaid were absolutely refused, and the giving of the bill of sale and the assignment of the leasehold were also refused, by Vockroth or his attorney, he standing by, unless Mrs. Chess, who was a stranger to the contract of sale, would sign the chattel mortgage, which she was unwilling to do, and did not do, although her husband's attorney asked her to do it; that no objection was made to the tender of the certified check, as being other than money or cash, till after the requirement and refusal of Mrs. Chess' signature to the chattel mortgage—indeed, no objection was ever made to the certified check by Vockroth personally; that the contract of sale was never fulfilled on the part of Vockroth, and that the return of the $500 deposit was demanded by Chess or his attorney, and was refused.

For the defendant: There were offered as exhibits an assignment of the leasehold interest and unexecuted draughts of a bill of sale of the stock, fixtures, &c., and of a chattel mortgage of the same. The oral evidence was to the effect that the method of paying or discharging the purchase-money testified to on the part of the plaintiff had been agreed upon

after the execution of the contract of sale; that by arrangement between the attorneys of the respective parties the draughts of the bill of sale and chattel mortgage were to be prepared, and actually were prepared, by Vockroth's attorney, and that they were in such form as to require the signatures of the wives of Vockroth and Chess, respectively; that Vockroth had never consented to receive a certified check instead of cash; that when it was tendered he had, by the advice of his attorney, rejected it, because it was not cash; that the promissory notes had not been tendered at all; that Mrs. Vockroth was ready and willing to sign the bill of sale, but Mrs. Chess refused to sign the chattel mortgage, although her husband's attorney tried to persuade her to do so, and Vockroth's attorney insisted that she should do so, saying that unless she did the transaction would not go through; that at the close of the last interview the return of the $500 was demanded and refused, and that at the time of the trial Vockroth was still in possession of the store and carrying on business there, and that he still had the $500 in his hands.

At the close of the plaintiff's case the defendant's counsel moved for a nonsuit on the ground that no proper tender, either of the chattel mortgage or of the cash, had been made by the plaintiff in accordance with the proved agreement. This motion was denied, and an exception was sealed on such denial. When both sides had rested the defendant's counsel asked for the direction of a verdict in his favor because the contract then before the court was not the contract sued upon, apparently meaning that it differed with respect to the consideration. At least, the meaning was so understood by the court. This motion was denied, but no exception was taken. He then renewed his request for a nonsuit on the ground that a proper tender had not been made, evidently meaning a request for the direction of a verdict on the same ground as that on which he had founded his motion for nonsuit. This also was denied, and an exception was sealed.

After the summing up, the court left the case to the jury, charging in effect that both parties agreed in saying that the manner of paying the purchase-money had been modified, and

that the important matters of fact were these: Was the chattel mortgage to be given by Mr. Chess or by Mr. and Mrs. Chess together? If by Chess alone, then did Mr. Vockroth, personally or through his attorney, refuse to carry out the contract of sale unless the mortgage were signed by Mrs. Chess as well? If he did, then whether Chess tendered the $2,500 in cash or in and by a certified check was of no consequence. No exception was taken to the charge.

The verdict of the jury was for the plaintiff, for the amount of the deposit, and judgment thereon was entered in the Supreme Court. On error, it has been removed into this court.

Error is specially assigned in that the trial justice refused to grant a nonsuit at the close of the plaintiff's case, when the defendant below showed that no proper tender had been made to him, and also in that the court did not rule that the certified check tendered by the plaintiff below was not a proper and legal tender.

For the plaintiff in error, *Eugene W. Leake* (on the brief).

The court refused to grant a nonsuit to the defendant below when it was clearly shown that no lawful tender was made.

The court failed to submit to the jury whether a certified check was or was not agreed upon as the method of paying the $2,500.

The court did not charge the jury that the payment was to be made in cash, as testified to by the plaintiff below, but wholly neglected to touch on the question.

For the defendant in error, *Robert M. Hudspeth, contra.*

The court did not err in refusing to nonsuit.

The opinion of the court, upon the case thus stated, was delivered by

GREEN, J. 1. The statement hereunto prefixed shows that the plaintiff in error objected, at the closing of the case, that

the contract before the court was not the contract sued on in the declaration, and asked for the direction of a verdict in his favor on that ground, and that the court refused such direction, evidently understanding the precise point of the objection to be that the contract as proved differed from the contract sued upon with respect to the mode of paying the consideration. In this view of the matter the ruling of the court was right, inasmuch as it can scarcely be doubted that proof of an agreement, entered into by the parties to a written contract, after the making of the contract and before the time for performance, whereby a new consideration or a new mode of paying the consideration is substituted for the first, is relevant, and proper to go to the jury, the modification being testified to by both parties, and relied upon by both parties, at the trial. The authorities certainly go as far as, if not further than, the circumstances of this case require. See 2 *Pars. Cont.* (*9th ed.*) 706, 708, bottom, and notes; 9 *Cyc. L. & Pro.* 593, 595–597, 756; *McEowen* v. *Rose,* 2 *South.* *582 (1819); *Stryker* v. *Vanderbilt,* 1 *Dutcher* 482, 496 (1856); *Church* v. *Florence Iron Works,* 16 *Vroom* 129, 132 (1883).

In another aspect of the matter, the objection had an unobserved force, and it is alluded to, not because advantage may now be taken of it, but because the affirmance of the judgment should not carry with it a supposed judicial approval of the plaintiff's declaration. A reading of the declaration reveals that the redress sought was the recovery of damages for the vendor's breach of an existing contract of sale. A reading of the evidence sent up with the bills of exception shows that what was tried in fact was the right to recover a deposit paid upon a contract of sale which had been terminated by abandonment, repudiation or rescission, wrought or acquiesced in by both parties. The distinction between such modes of redress clearly appears in the opinion of this court in *McTague* v. *Sea Isle City Building Association,* 28 *Vroom* 427, 428, 429 (1894). Had the defendant below rested his objection upon the ground of variance, and argued that only questions within the issue are to be submitted to

the jury—*Partridge* v. *Woodland Steamboat Co.,* 37 *Id.* 290, 294 (1901)—doubtless the learned trial justice would have given due heed to the objection. At this time, however, the objection does not lie in the mouth of the plaintiff in error. If there were nothing else in the way, this would be—the failure to make distinctly and plainly known to the court below any such ground of objection as we have now suggested. See *Bell* v. *Mecum, ante p.* 547 (1907). Furthermore, the objection will not now be regarded *e proprio motu* by this court. It is well settled that when the real question in dispute has been fairly tried, and the ends of justice will be promoted, the declaration will be amended here in order to support the judgment below. *American Life Insurance Co.* v. *Day,* 10 *Vroom* 89, 91 (1876); *Blackford* v. *Plainfield Gas Light Co.,* 14 *Id.* 438, 441, 442 (1881).

2. In argument the counsel for the plaintiff in error has contended that there was error in that the trial court failed to submit to the jury whether a certified check was or was not agreed upon as the method of paying $2,500 of the purchase-money.

To this it seems sufficient to say that, if it be true that there was such failure, the point is not embraced in any exception taken in the court below, and therefore is not to be considered or decided. *Williams* v. *Sheppard,* 1 *Gr.* 76, 78 (1832); *Pennsylvania Railroad Co.* v. *Page,* 12 *Vroom* 183, 184 (1879). In the absence of a bill of exception, error cannot be assigned on the matter which such bill should contain, neither can the judgment be reversed. *Wanamassa Park Association* v. *Clark,* 32 *Id.* 611, 612 (1898); *Conrad* v. *Brocker,* 41 *Id.* 823 (1904); *Crosby* v. *Wells,* 44 *Id.* 790, 803 (1906).

Even though a perusal of the whole printed case should show negatively that there was such a failure, the argument here would not be successful, inasmuch as, on error, it will be presumed, in the absence of instructions to the contrary, that the trial court submitted all disputed questions of fact to the determination of the jury. *Marsh* v. *Newark Heating and Ventilating Machine Co.,* 28 *Vroom* 36, 39 (1894).

3. On the argument it was also urged that there was error in that the trial court did not charge the jury that payment was to be made in cash, as testified to by the plaintiff below, but wholly neglected to touch on the question.

Assuming (what may not be true) that the point has been raised upon a proper bill of exception and assignment of error, we find no weight in the argument. A mere omission to give a pertinent charge, when not requested (there was but one request to charge in the present case, and that was granted), or to state some legal principle applicable to the facts of the case is no ground of error. *Folly* v. *Vantuyl*, 4 *Halst.* *153, *156, *158 (1827) ; *Hetfield* v. *Dow*, 3 *Dutcher* 440, 447, 448 (1859) ; *Conover* v. *Middletown*, 13 *Vroom* 382, 384 (1880) ; *Mead* v. *State*, 24 *Id*. 601, 606 (1891). Modern English cases state the rule rather more tersely, to wit: It is misdirection, and no non-direction, that is the proper subject of a bill of exceptions. *McAlpine* v. *Mangnall*, 3 *C. B.* 496, 510, 517 (1846) ; *Greene et al.* v. *Bateman*, *L. R.*, 5 *Eng. & Ir. App.* 591, 602, 603 (1872) and *note*. At first sight this seems incomplete, but a careful perusal of these cases and of the New Jersey cases last above cited, together with *Petre et al.* v. *State*, 6 *Vroom* 64, 68 (1871), and *Packard* v. *Bergen Neck Railway Co.*, 25 *Id.* 553, 557 (1892), shows that there is no real conflict of judicial opinion. Further, such cases as *Den* v. *Sinnickson*, 4 *Halst.* *149, *152 (1827), and *Marley* v. *State*, 29 *Vroom* 207, 209 (1895), are not opposed to the rule in either form. The earlier case was on a rule to show cause why a new trial should not be granted; the later disapproved of an omission which made the charge partial, and hurtful to the person convicted.

4. We are now to inquire whether the trial court should have allowed the motion for nonsuit, on the ground that no proper tender of the chattel mortgage or of the $2,500 in cash had been made by the plaintiff below. There was, indeed, a motion to direct a verdict for the defendant below on the same ground, and an exception was sealed on its denial. No assignment of error, however, embraces the point, and there-

fore the propriety of the motion to nonsuit only will be considered.

As we look at the question we perceive that there are several elements in it, to wit, Was the defendant, Vockroth, justified in refusing to carry out the contract of sale unless Mrs. Chess would join with her husband in executing the chattel mortgage? If he unjustifiably refused, did he thereby waive any tender of the mortgage and of the cash? If he waived a tender, was he entitled, as the case stood, to a judgment of nonsuit?

(*a*) Unless a special agreement to that end was made by the parties or their authorized agents (and evidently the jury found no such agreement as a fact), Mrs. Chess' signature to the chattel mortgage was not necessary.

By the common law, as we inherited it from the mother country, a *feme covert* acquired no right in the personalty of her husband during his lifetime, the paraphernalia excepted. 2 *Bl. Com. (Lewis' ed.)* *435, *436; *Reeve Dom. Rel. (1st ed.)* 37. All that she could acquire in the personalty was a right to one-third part or share at the husband's death intestate, and this right he could defeat by a testamentary disposition. 2 *Bl. Com.* *492, *493. The underlying principles which required a wife to be a party to any form of assurance of land, or which led, with us, to any such enactment as may be found in 1 *Gen. Stat., p.* 1275, § 1, were and are wholly lacking, with respect to personalty.

Mr. Jones, in writing the article "Chattel Mortgages," in 6 *Cyc. L. & Pro.,* says (at *p.* 999):

"Since at common law a valid mortgage could be created by parol, informalities in the signature of a mortgage will not invalidate it, unless certain requirements are made necessary by statute, such as that chattel mortgages shall be executed in like manner as mortgages of real estate, or that mortgages of household property shall be signed by both husband and wife."

At present we are interested in the correctness of this statement of the law only so far as it indicates that the signature

of the wife to a chattel mortgage is not necessary unless required by statute.

In this state there is a statute, first enacted in 1893 (2 *Gen. Stat., p.* 2111, § 41), and reproduced· in "An act concerning mortgages on chattels (Revision of 1902)" (*Pamph. L.* 1902, *p.* 489, § 10), which prescribes that "a chattel mortgage of household goods and furniture in the use and possession of any family  *  *  *  shall be duly signed, sealed, executed and acknowledged by the husband and wife." In the cases in which this statute has been set up against the validity of a chattel mortgage not signed by a wife it has been construed strictly, perhaps as in derogation of the common law. *Green* v. *McCrane,* 10 *Dick. Ch. Rep.* 436, 439–441 (1897); *Dunham* v. *Cramer,* 18 *Id.* 151, 155, 156 (1902). Inferentially these cases support the view that outside of the scope of this statute there is no law that requires the wife's signature to a chattel mortgage.

We think, then, that in insisting upon the signature of Mrs. Chess as a condition of his own performance, the defendant, Vockroth, was not justified by the common or statute law.

(*b*) If there was evidence to sustain a conclusion that the defendant wrongfully refused to perform his undertaking unless Mrs. Chess would sign the chattel mortgage, the next question is, did he thereby waive a tender of the mortgage and of the cash? Or, as some authorities put it, did the plaintiff, Chess, then stand excused from making any such tender?

Undoubtedly there may be cases in which a tender of one thing or another is necessary before suit brought. A few illustrations occur to us. The tender of a note for $58, for the final payment on a contract of sale of land, was held in this court—*Ware* v. *Lippincott,* 18 *Stew. Eq.* 220, 224 (1888) —to be the act which entitled the vendee to. a conveyance. The tender of $295 was held—*Harvey* v. *Trenchard,* 1 *Halst.* *126, *127 (1822)—to be a prerequisite to the maintaining of an action at law for damages for not delivering a deed of

land. It has been determined also that in paying cash a tender should be in lawful money, unless by special agreement between the parties. *Coxe* ads. *State Bank at Trenton,* 3 *Id.* \*172, \*174 (1825); *Hoagland* v. *Post, Coxe* \*32 (1790). Such decisions are not, however, controlling of the case in hand.

In *Pittenger's Administrator* v. *Pittenger,* 2 *Gr. Ch.* 156, 165 (1834), it appeared that a purchaser took the deed of conveyance into his hands and read it; that he then handed it back and said he believed he would not take it. On these facts it was held that "where a deed is to be given, and the party is present, prepared to give it, and the one who is to receive it positively declines, there is no need of a formal execution and tender." In *Thorne* v. *Mosher,* 5 *C. E. Gr.* 257, 258, 262 (1869), it was in evidence that the defendant went to the complainant's house to pay the interest upon a debt; that she had the amount in her purse in her hand, the purse but not the money being in the complainant's sight, and that she was in the act of taking the offered money out of her purse, but stopped because the complainant refused to receive the interest. On this evidence the Chancellor said that the offer was neither payment nor tender, but the refusal was a sufficient excuse for not making an actual tender. In the very late case of *Crosby* v. *Wells,* 44 *Vroom* 790, 792, 802 (1906), it appeared that a certificate of stock, with an assignment thereof, was in the defendant's pocket, ready to be returned, but was not delivered or perhaps even shown, because the plaintiff declared that he would not receive the papers at all. That the act of rescission thus fell short of a complete return of the thing sold did not, in the opinion of this court, destroy the effect of the notice and offer to return, the defendant not being required to do more than, under the circumstances of the case, the plaintiff permitted him to do.

We think that, under the principle of these cases, the wrongful insistence of the defendant below was evidential of a waiver on his part of an actual tender by the plaintiff below of that part of the purchase-money which was to be paid in

cash, or of the chattel mortgage which was to secure the residue of the purchase-money, and thereby the plaintiff was excused from making such tender. A similar view was expressed by the Supreme Court of Pennsylvania in the late case of *Douglas* v. *Hustead,* 216 *Pa. St.* 292, 299, 300 (1907).

(c) We thus reach the last element of the inquiry, whether the defendant was entitled to a judgment of nonsuit, when the plaintiff rested.

In the consideration of this element we should, of course, confine ourselves to the merits of the ground on which the motion was placed. *Zeliff* v. *North Jersey Street Railway Co.,* 40 *Vroom* 541, 542 (1903); *Maguth* v. *Freeholders of Passaic,* 43 *Id.* 226, 227 (1905). It being already determined that the plaintiff below was excused from making *any* actual tender, it would be a waste of time gravely to inquire whether he had made a *proper* tender. The motion on the ground alleged was rightly disallowed. Moreover, we think that if the motion had been granted, this could have been done only in disregard of legitimate evidence offered by the plaintiff, and such a ruling would not be approved. *Metting* v. *North Jersey Street Railway Co.,* 40 *Id.* 605 (1903); see *Cadwallader* v. *Hirshfield,* 33 *Id.* 747, 751, 752 (1898).

The conclusion is that the judgment below should be affirmed. This conclusion, it may be remarked, puts the case in harmony with decisions, of which *Zimmerman* v. *Branyan,* 33 *Vroom* 478 (1898), and *Wolff* v. *Meyer, ante p.* 181, are types, although they be not controlling precedents.

Let an affirmance be entered, with costs.

*For affirmance*—PITNEY, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.    12.

*For reversal*—None.